UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11420-RGS

PCC ROKITA, SA

v.

HH TECHNOLOGY CORP.

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

December 13, 2021

STEARNS, D.J.

Plaintiff PCC Rokita SA (PCC) seeks to enforce a default judgment entered by the Regional Court in Wroclaw, Poland, against defendant HH Technology Corp. (HHT), pursuant to the Massachusetts Uniform Foreign Money-Judgments Recognition Act (Recognition Act), Mass. Gen. Laws ch. 235, § 23A (Count I), and under principles of comity (Count II). The relevant background is as follows: HHT is a Massachusetts-based engineering firm. PCC is a Polish chemical manufacturer. In 2005, the two companies entered into an Agreement under which HHT was to retrofit and upgrade PCC's propylene oxide production plant in Poland. The Agreement, executed in both English and Polish, provided that any "dispute shall be resolved by a

court of law having jurisdiction over [PCC]'s seat," and further, that the "Agreement shall be governed by Polish law." Dkt # 11-1 § 11.7.

In June of 2008, PCC sued HHT in the commercial division of the Wroclaw Regional Court alleging breach of the Agreement, claiming that HHT had failed to deliver a final upgraded system because of a defective design. In November of 2009, notice of the lawsuit was served on Richard Malone, HHT's principal, at his home in Massachusetts. HHT did not respond to the lawsuit and a default judgment issued in April of 2010. The judgment ordered the reimbursement of the $1,016,500 that PCC had paid to HHT under the Agreement, as well as a compensatory award of approximately $12 million in lost profits and other damages, together with statutory interest. *See* Dkt # 11-5.

PCC filed this action to enforce the judgment in July of 2018. After unsuccessful efforts at mediation, PCC moved for judgment on the pleadings in April of 2019. On HHT's motion, the court stayed the action pending the outcome of a proceeding that HHT had initiated in August of 2018 in the Wroclaw Regional Court seeking to reopen the judgment. *See* Dkt # 39. In April of 2021, the parties informed this court that the reopening request had been rejected by the Wroclaw court and that HHT had exhausted its appeal as a matter of right. This court extended the stay at HHT's request while it

sought certiorari review in the Court of Cassation (the Polish equivalent of the U.S. Supreme Court). The petition for discretionary review was denied. This court then reinstated the case and received additional briefing from the parties. Oral argument on PCC's motion for judgment on the pleadings was heard on November 29, 2021.

DISCUSSION

Under the Recognition Act, "any foreign judgment that is final and conclusive and enforceable . . . shall be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." Mass. Gen. Laws ch. 235, § 23A.

> A foreign judgment shall not be conclusive if (1) it was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law; (2) the foreign court did not have personal jurisdiction over the defendant; or (3) the foreign court did not have jurisdiction over the subject matter.

*Id.* The Act further enumerates seven instances in which a foreign judgment shall not be recognized:

> (1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; (2) the judgment was obtained by fraud; (3) the cause of action on which the judgment is based is repugnant to the public policy of this state; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceedings in the foreign court were contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; (6) in the case of jurisdiction based

> only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or (7) judgments of this state are not recognized in the courts of the foreign state.

*Id.*

PCC asserts that the judgment of the Wroclaw court is final, conclusive, and enforceable in Poland and is therefore reciprocally enforceable in Massachusetts. The judgment was affixed by the Polish court with an enforceability clause (a separate ruling) on July 21, 2010. PCC notes that, having agreed to submit any disputes arising out of the Agreement to the Polish courts, HHT cannot and does not dispute personal or subject matter jurisdiction in the Wroclaw Regional Court. PCC also points to the consensus that, as a member of the European Union, Poland is presumed to provide an impartial system of justice. *See*, *e.g.*, *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 994-995 (10th Cir. 2005) ("[O]ur courts have long recognized that the courts of England are fair and neutral forums.") (citation omitted) (pre-Brexit decision); *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994) ("Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process."); *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 687-688 (7th Cir. 1987) ("[T]he procedures afforded . . . by the Belgian judicial system were fundamentally fair and did not produce an injustice.");

*Servaas Inc. v. Republic of Iraq*, 686 F. Supp. 2d 346, 359 (S.D.N.Y. 2010) ("Nor is it argued that the International Chamber of Commerce, the Paris Commercial Court, or the Paris Court of Appeal are not "impartial tribunals."); *Kreditverein Der Bank Aus. Creditanstalt Fur Niederosterreich Und Burgenland v. Nejezchleba*, 2006 WL 1851129, at *3 (D. Minn. June 30, 2006) (There is nothing "to indicate that Austria's legal system is not 'fundamentally fair' or that it offends American ideas of 'basic fairness.'"); *see also* Council Regulation 1215/2012, art. 36(1), 2012 O.J. (L351) 1 (EU) ("A judgment given in a [European Union] Member State shall be recognised in the other Member States without any special procedure being required.").

HHT, for its part, challenges the judgment on several grounds. This court will consider each in turn.

*Fraud*

HHT first contends that the judgment was obtained by fraud. According to HHT, PCC materially misled the Wroclaw court into believing that the parties had not agreed to a limitation on damages. The English version of the Agreement provides that "[i]n no event shall HH[T] be responsible for liquidated damages in excess of 8% of the contract price as stated in Appendix C." Agreement § 4.5. The Polish version of the Agreement does not include this limitations language, and both versions

state that "[i]n the case of any discrepancy, the English version shall prevail."[1] *Id.* § 13.[2] In HTT's view, these terms unequivocally limit any damages that PCC is able to recover under the Agreement to 8% of the contract price – namely, $86,800. HHT characterizes as fraudulent PCC's argument to the Wroclaw court that the inconsistency between the English and Polish versions of the Agreement evidenced a "lack of consensus" between the parties on the issue. Action for Payment (Dkt # 11-2) at 16.

The court agrees with PCC that HHT's allegation of fraud, even if accepted *arguendo* as true,[3] does not constitute a viable defense under the

---

[1] In 2006, during a visit to PCC's facility, Malone was asked but refused to sign a revised English version of the Agreement removing the damages limitation clause. *See* Malone Aff. (Dkt # 57) ¶ 5.

[2] The Agreement contains two sections numbered 13. This is the second of the two, immediately preceding the signature block.

[3] PCC submitted a copy of the English version of the Agreement to the Wroclaw court. It also anticipated HHT's argument and offered the following rebuttal.

> [B]y way of precaution, the Plaintiff indicates that the content of the questioned provision in connection with the last paragraph of Annex C (in both cases of English version) – even if it was actually agreed upon – would at most mean the fixing of the liquidated damages in the amount of 8% of the value of the Agreement in case of damage caused during the start-up of the modernized plant. Bearing in mind that the retrofit expansion of the plant did not occur due to the defects in the Base Design, the

Recognition Act. "While the Recognition Act provides a defense if the foreign judgment is obtain[ed] by fraud, the fraud must relate to matters other than issues that could have been litigated . . . ." *Soc'y of Lloyd's v. Hamilton*, 501 F. Supp. 2d 248, 252 (D. Mass. 2007) (internal quotation marks and citation omitted). In *Hamilton*, the court concluded that a defense that the defendant was fraudulently induced to become an insurance investor by Lloyd's should have been raised in the underlying foreign action and therefore did "not meet the requirement of 'fraud' as contemplated by the Recognition Act." *Id.* at 252-253; *see also Farrow Mortg. Servs. Pty. Ltd. v. Singh*, 1995 WL 809561, at *3 (Mass. Super. Mar. 30, 1995) ("Fraud relative to issues which were litigated, or which could have been raised in the initial proceeding are not relevant to the issue of recognition of a foreign judgment.").

Here, what HHT labels as fraud would necessarily have been a primary focus in the Polish litigation had HHT not defaulted, as it directly involves the interpretation of the parties' Agreement and the applicability of the limitations of damages provision. This court is unable to assess the falsity of the purported misrepresentation without interpreting the Agreement, a

---

> discussion concerning the alleged limitation of liability pursuant to §4 (5) of the Agreement is irrelevant.

Action for Payment at 17.

litigation exercise barred by the Recognition Act. HHT's citation of *John Sanderson & Co. (Wool) Pty. v. Ludlow Jute Co.*, 569 F.2d 696 (1st Cir. 1978),[4] does not alter but rather reinforces this conclusion. In *John Sanderson*, in enforcing a default foreign judgment, the First Circuit specifically held that a defense that could have been raised before the judgment court cannot be litigated in a recognition action. "The Bretton Woods Agreement might possibly have been a legitimate defense before the Australian court and it could have been raised there since Australia is a signatory, but, because it was not, such defense is now foreclosed." *Id.* at 699. Likewise, HHT could have advocated for its preferred reading of the Agreement and the limitation of damages clause in the Wroclaw court, but having defaulted, it is too late to resurrect the issue.

*Insufficient Process*

HHT next asserts that Poland's notice procedure does not comport with due process.[5] HHT received initial notice of the lawsuit in November of 2009 – Malone "recall[s] a document identifying a 14-day response deadline

---

[4] *John Sanderson* was decided on the pre-statute common-law regime of foreign judgment recognition under *Hilton v. Guyot*, 159 U.S. 113 (1895).

[5] HHT does not suggest that the Polish courts are not "impartial tribunals."

and the possibility of a default." Malone Aff. ¶ 7; *see also* Proof of Service (Dkt # 11-4). Believing that HHT lacked the economic means to litigate the dispute in Poland, Malone chose not to respond. Under Article 1135(5) of the Polish Code of Civil Procedure, because HHT had failed to timely designate a service proxy in Poland, it was deemed to have received all of the relevant court filings.[6] HHT received no further communication from the Wroclaw court and obtained a copy of the judgment only after PCC brought this recognition action.[7] Of particular significance in HHT's view is its assertion that it never received notice of the dollar magnitude of the judgment. "I did not know that a court in Poland in 2010 had awarded PCC in excess of $13,000,000 (without interest). Had I known that I certainly would have done something about it." Malone Aff. ¶ 9.

HHT points to a European Court of Justice opinion – Judgment of 19 December 2021, *Alder v. Orlowska,* C-325/11, EU:C:2012:824 – in support

---

[6] HHT contends that the English translation of the instructions concerning the consequences of not appointing a proxy in Poland were incomprehensible: "After ineffective time of shown time limit of the letter given for both parties or participants of civil procedure shall be affix to the records of the proceeding in the case with the effect of delivery." Dkt # 64-7 at 8.

[7] In 2011, HHT received a letter from a Boston law firm inquiring on behalf of a Polish company in possession of a judgment against HHT as to whether HHT was still in business. HHT engaged an attorney to answer the letter and sought to obtain a copy of the judgment but received no response.

of its argument that the fictitious service authorized by Article 1135(5) does not comport with due process. In *Alder*, German plaintiffs brought an action for payment against Polish defendants in the Polish courts. The plaintiffs failed to designate a proxy in Poland to receive service, and their claim was dismissed after a hearing at which plaintiffs failed to appear. The European Court of Justice reasoned that

> a system for notional service, such as that laid down in Article 1135(5) of the Code of Civil Procedure, is incompatible with the objective of protecting the rights of the defence envisaged in [European Union] Regulation No 1393/2007. Indeed . . . that system deprives of all practical effect the right of the person to be served, whose place of residence or habitual abode is not in the Member State in which the proceedings take place, to benefit from actual and effective receipt of that document because it does not guarantee for that addressee, inter alia, either knowledge of the judicial act in sufficient time to prepare a defence or a translation of that document.

*Id.* ¶ 40. The Court concluded that Regulation No. 1393/2007 precluded the system of notation service set out in Article 1135(5). Acknowledging that the European Court opinion is not binding on an American court, HHT nevertheless contends that the rationale of the decision is persuasive evidence that Article 1135(5) did not adequately enable HHT to exercise its "right of defence."

As the Supreme Judicial Court recently explained, "the recognition act is best understood as requiring the same level of notice as required by due

process. Notice, in other words, must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Cassouto-Noff & Co. v. Diamond*, 487 Mass. 833, 835-836 (2021), quoting *Jones v. Flowers*, 547 U.S. 220, 226 (2006). There is no dispute in this case that HHT received initial notice of the "pendency of the action" that "afford[ed] the[] opportunity to present [] objections."

Article 1135(5) does not displace the Hague Convention on Service Abroad. Rather, it concerns the way in which a foreign party in a Polish litigation receives *subsequent* notice associated with a case. HHT complains about the fictitious nature of such service, however, HHT has not identified any constitutional requirement that it was to be continually provided notice *after* it had elected not to respond to the lawsuit. HHT points to *Titan PRT Sys., Inc. v. Fabian*, 1997 WL 27120, at *3 (Mass. Super. Jan. 13, 1997), for the suggestion that it should have at least received notice of the assessment of damages hearing. *Titan* concerned the recognition of a default judgment obtained in New Jersey state court. The Massachusetts court opined that the absence of notice to defendant of the damages hearing "[a]rguably . . . could constitute a failure of 'notice of the proceedings in sufficient time to defend' within the meaning of the [Recognition Statute.]" *Id.*, at *3. Under

Massachusetts law, however, "[i]f the defaulting party has not appeared in the action, he is not entitled to notice of the plaintiff's pending application for judgment." *Bornstein v. Sunstate Equities, Inc.*, 2005 Mass. App. Div. 67 (Dist. Ct. 2005), quoting Mass. R. Civ. P. 55 Reporters' Notes. In the exercise of according "full faith and credit" to a foreign judgment, Mass. Gen. Laws ch. 235, § 23A, Massachusetts cannot require a litigant seeking recognition of a foreign judgment be held to a higher standard of notice than is required in its own courts.

A question of fact remains, however, of whether HHT received adequate initial notice of *all* the claims of the lawsuit "in sufficient time to enable [it] to defend." Mass. Gen. Laws ch. 235, § 23A. After receiving the papers from the service processor at his home, Malone immediately went to HHT's office, scanned the documents, and shared them with his business partner, Urs Geser.[8] *See* Dkt # 64-7; *see also Quinn v. Quinn*, 5 Mass. App. Ct. 794, 794 (1977) ("[T]he validity of the foreign judgment can be attacked by the use of extrinsic evidence."). The scanned documents included seven pages in total. The first page is the "Request" for service, listing HHT's address and setting out the list of documents to be served. *See* Dkt # 64-7 at

[8] PPC points to these scanned documents as further proof that Malone received notice of the lawsuit.

HHT-000082. The second page is entitled "Summary of the Documents To Be Served," listing the parties and identifying the amount in dispute:

JUDICIAL DOCUMENTS * Acte judiciaire *
Dokument sądowy*
NATURE AND PURPOSE OF THE DOCUMENTS
Nature et objet de l'acte
Rodzaj i przedmiot dokumentu: **Service o fan action with instructions according article 479[14] in connection with article 479[18] of the civil procedure code, ace of claim with enclosures, instructions according article 1135[5] of the civil procedure code**
NATURE AND PURPOSE OF THE PROCEEDINGS AND, WHERE APPROPRIATE, THE AMOUNT IN DISPUTE:
Nature et l'objet de l'instance, le cas échéant, le montant du litige:
Rodzaj i przedmiot postępowania, w miarę potrzeby wartość przedmiotu sporu: **1.016.500,00 USD**

*Id.* at HHT-000083. The next two pages consist of a letter in Polish and its English translation, instructing HHT to respond within fourteen days or risk a default. *See id.* at HHT-000084-85. The final three pages are in Polish accompanied by an English translation providing "Instructions" including the previously discussed warning of the consequences of failing to appoint a proxy in Poland to receive service. *See id.* at HHT-000086-89. What does not appear among the pages produced to this court is a copy of the complaint (Action for Payment). At the hearing on November 20, 2021, PCC could not say unequivocally that the complaint was served on Malone.

PCC argued at the hearing that, even if the complaint as omitted, HHT received the equivalent of a summons with notice of "the pendency of the action [that] afford[ed] them an opportunity to present their objections" as required by *Cassouto-Noff*. Effective notice, however, "must be of such nature as reasonably to convey the required information." *Mullane v. Cent.*

*Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Without the Complaint, the notice HHT received did not convey the full extent of the potential liability it faced in the lawsuit (information that may well factor into a decision of whether to mount a defense). The amount in dispute set out in the service papers – $1,016,500.00 – is the amount PCC had paid HHT under the Agreement. While this reasonably informed HHT that PCC sought reimbursement of these payments, it did not on its face warn HHT that lost profits damages exceeding the value of the Agreement by more than ten-fold were also being sought.[9]

The service of a summons without a complaint can suffice to support the issuance of a default judgment. Massachusetts courts would presumably recognize a default judgment issued by the courts of our sister state of New York. *See Ross v. Garcia*, 71 Mass. App. Ct. 1106 (2008) (recognizing a default judgment issued by a New York court). Under New York law, a summons may be served with only "a notice stating the nature of the action and relief sought." N.Y. C.P.L.R. § 305(b). The primary intent of this brevis

[9] PCC points out that it informed HHT of its claim for lost profits in the Call for Payment sent prior to initiating the lawsuit. *See* Dkt #64-4. This Call for Payment, however, is not notice of the lawsuit and does not displace service under the Hague Convention.

notice is "to enable plaintiffs to take a default judgment." *Vill. of Wellsville v. Atl. Richfield Co.*, 608 F. Supp. 497, 498 (W.D.N.Y. 1985).

The service of a notice in lieu of a complaint, however, limits the amount of a plaintiff's recovery in the event of a default. To that end, the notice must "include the sum of money for which judgment may be taken in case of default." *Id.* Before this rule was codified, the Supreme Court of New York explained the rationale for limiting a default judgment to the amount stated in the notice. "When [defendant] was served with the summons he had the right to rely on the notice attached thereto that upon his default judgment would be taken against him for the breach of his contract to pay the note. No other judgment could be rendered against him." *Thomas v. First Nat'l Bank of Lisbon*, 263 A.D. 476, 478 (N.Y. App. Div. 1942). Therefore, "if defendant[] had defaulted in appearing in this action after the service of the summons with notice, judgment could not have been entered against her by default on any other cause of action or for more than the amount specified in the notice." *Everitt v. Everitt*, 4 N.Y.2d 13, 16 (1958).

Applying the New York analogy, HHT received sufficient notice of the $1,016,500 reimbursement claim for this court to recognize that portion of the judgment. The record, however, does not clearly reflect that HHT received notice of the loss profits portion of the judgment. As this issue is

before the court on a motion for judgment on the pleadings, the court will provide the parties the opportunity to further investigate and brief this issue.

*Violation of Public Policy/Punitive Damages*

HHT finally characterizes the judgment as repugnant to the Massachusetts public policy prohibiting the award of punitive damages that are not expressly authorized by statute. "Repugnancy is strong medicine, best administered sparingly. A judgment will offend public policy when 'the original claim is repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.'" *Cassouto-Noff*, 487 Mass. at 837 (citation omitted). "[W]hether a judgment is 'a fine or other penalty' depends on whether its purpose is remedial in nature, affording a private remedy to an injured person, or penal in nature, punishing an offense against the public justice." *Desjardins Ducharme v. Hunnewell*, 411 Mass. 711, 714 (1992). Here, PCC explained in the Action for Payment that the amount of the requested damages in excess of its contract payments is to recover

> the loss of profit by PCC Rokita due to failure to carry out the planned retrofit expansion of the propylene oxide plant, which includes the increased costs of production and unrealized savings calculated on the assumption that the execution of the investment was delayed by 3 years. The estimate of the loss of profit by the Plaintiff has been made pursuant to the data adopted in the profitability analysis in 2006.

Action for Payment at 18-19. PCC also provided a profitability analysis in support of its damages request. *See id.* Massachusetts law permits the recovery of lost profits in a contract dispute. *See Augat v. Aegis, Inc.*, 417 Mass. 484, 488 (1994). Accordingly, there is no basis on which the court could conclude that the judgment constitutes an impermissible fine or penalty.[10]

ORDER

For the foregoing reasons, PCC's Motion for Judgment on the Pleadings is ALLOWED IN PART as to the $1,016,500 portion of the judgment, and otherwise DENIED WITHOUT PREJUDICE. The parties will have until February 14, 2022, to respond (in fact and in law) on the remaining issue of the sufficiency of notice of the lost profits claim.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

[10] HHT also characterizes the judgment as contrary to the public policy of the freedom of contract because the judgment vitiates the parties' intent to limit damages to 8% of the contract price. This, too, is an argument that concerns the proper interpretation of the contract that was forfeited by the default.